UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TIMOTHY A. REMMIE,<br><br>　　　Plaintiff,<br><br>　　　　　v.<br><br>HON. RAYMOND MABUS,<br>Secretary of the Navy,<br><br>　　　Defendant. | Civil Action No.  11-1261 (JEB) |

## MEMORANDUM OPINION

Plaintiff Timothy A. Remmie enlisted in the Navy in 1978.  In 1993, he was involuntarily discharged after his former wife accused him of sexually abusing their daughter, accusations later found to be unsubstantiated.  For the ensuing 19 years, Remmie has been engaged in repeated efforts to correct his military records before the Board for the Correction of Naval Records.  In 1999, he was permitted to re-enlist in the Navy, and he served until retiring in 2006.  In 2007, he petitioned the BCNR for a variety of forms of relief.  The Board's 2008 decision, however, granted him only some of what he sought.  Plaintiff then brought this action against Raymond Mabus, Secretary of the Navy, under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*., challenging the Board's decision to deny certain of his requests.  Both parties have now moved for Summary Judgment.  Because the Court finds that the Board did not adequately explain its 2008 decision, it will remand the matter to the Secretary for further clarification.

**I.     Background**

Plaintiff enlisted in the Navy in 1978. See AR 835, 907, 934-35, 790. In 1990, he and his wife agreed to file for divorce. See Compl., ¶ 10. During the bitterly contested custody battle that followed, see AR 265, the former Mrs. Remmie accused Plaintiff of sexually abusing their three-year-old daughter, an allegation he vigorously denied. See Compl., ¶ 14. Although Plaintiff was not charged with any crime, the Virginia Beach Social Services Department separately determined that Plaintiff had abused his daughter. Id., ¶¶ 16-17.

On August 12, 1992, the Navy's Family Advocacy Program (FAP) Case Review Subcommittee determined that sexual abuse was "substantiated." See AR 220, 364. Relying on the subcommittee's findings, the FAP formally recommended Plaintiff be processed for separation. He was involuntarily discharged on June 10, 1993, and his name and information were placed in the Navy's Central Registry of child- and domestic-abuse incidents. See AR 771. A Virginia state court subsequently granted Plaintiff's petition for divorce, concluding that the alleged child abuse had not been shown and that the allegations had arisen from the contentious custody battle. See AR 265.

This unfortunate backdrop set in motion Plaintiff's nearly two-decade-long effort to clear his name. See Compl., ¶¶ 34-94. On April 13, 1995, Plaintiff submitted a request to the BCNR seeking a discharge upgrade to "honorable," reinstatement, back pay, credit for time lost, and promotion with his peers. See AR 518-526. The BCNR's June 3, 1997, decision granting Plaintiff partial relief was approved by the Secretary's office on June 11, 1998. See AR at 225-31, 245-50. In September 1999, Plaintiff was allowed to reenlist in the Navy, see AR 732, and served uneventfully until his retirement in April 2006. See AR 692-694.

In the intervening years, Plaintiff attempted to have his name and information deleted from the Navy's Central Registry and to obtain additional relief from the BCNR. See Compl., ¶¶ 49-94. He ultimately made another formal application in May 2007 to the BCNR seeking, among other things, removal of his name from the Central Registry, retroactive promotion, and retroactive reenlistment. See AR 10-13. His application was largely denied on June 16, 2008. See AR 131. Plaintiff's name was finally deleted from the registry on June 26, 2008, after Assistant General Counsel Robert T. Cali found that the BCNR's earlier recommendation was "untenable" and ordered Plaintiff's name removed. See AR 130. In 2010, Plaintiff filed a complaint in the Court of Federal Claims, seeking substantial money damages he allegedly incurred as a result of the Board's 2008 decision denying, *e.g.*, his request for retroactive promotion. See Remmie v. United States, 98 Fed. Cl. 383 (Fed. Cl. 2011). The Claims Court dismissed Plaintiff's suit as barred by the statute of limitations. Id. at 389.

Plaintiff next brought this action in June 2011 under the Administrative Procedure Act, seeking, *inter alia*, additional corrections to his military records and retroactive reenlistment and promotion or, in the alternative, a remand to the BCNR for further consideration of his 2007 petition. On March 5, 2012, this Court granted in part and denied in part Defendant's Motion to Dismiss, dismissing Plaintiff's claims for retroactive reenlistment and promotion on justiciability grounds. See Remmie v. Mabus, 846 F. Supp. 2d 91, 95 (D.D.C. 2012) (Remmie I). Defendant then filed a Renewed Motion to Dismiss on further jurisdictional grounds, and both parties filed Cross-Motions for Summary Judgment, all of which the Court now considers.

**II.     Legal Standard**

While Plaintiff's Motion is for summary judgment only, Defendant's Motions seek either dismissal or, in the alternative, summary judgment.  Taken together, the three motions are brought pursuant to two different Federal Rules of Civil Procedure and implicate two distinct standards of review.  Defendant's argument that this Court lacks subject-matter jurisdiction will be adjudicated according to the standard applicable to motions to dismiss under Rule 12(b)(1).  The parties' summary-judgment motions, conversely, will be decided consistent with the APA standards enumerated in Part II.B, *infra*.

   A.  Motion to Dismiss

In evaluating a motion to dismiss under Rule 12(b)(1), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear his claims.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).  A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."  Grand Lodge of Fraternal Order of Police v. Ashcroft, 185

F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987) (alteration in original)).

  B. Summary Judgment

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. Holcomb, 433 F.3d at 895; Liberty Lobby, Inc., 477 U.S. at 248. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, Inc., 477 U.S. at 248; Holcomb, 433 F.3d at 895.

Although styled as Motions for Summary Judgment, the pleadings in this case more accurately seek the Court's review of an administrative decision. The standard set forth in Rule 56(c), therefore, does not apply because of the limited role of a court in reviewing the administrative record. See Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006) (citing National Wilderness Inst. v. United States Army Corps of Eng'rs, 2005 WL 691775, at *7 (D.D.C. 2005); Fund for Animals v. Babbitt, 903 F. Supp. 96, 105 (D.D.C. 1995), amended on other grounds, 967 F. Supp. 6 (D.D.C. 1997)). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Sierra Club, 459 F. Supp. 2d at 90 (quoting Occidental Eng'g Co. v. INS, 753 F.2d 766, 769-70 (9th Cir. 1985)) (internal quotation marks omitted).

Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review. See Richards v. INS, 554 F.2d 1173, 1177 (D.C. Cir. 1977), cited in Bloch v. Powell, 227 F. Supp. 2d 25, 31 (D.D.C. 2002), aff'd, 348 F.3d 1060 (D.C. Cir. 2003).

The Administrative Procedure Act "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." FCC v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009). It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This is a "narrow" standard of review as courts defer to the agency's expertise. Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). An agency is required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Id. (internal quotation omitted). The reviewing court "is not to substitute its judgment for that of the agency," id., and thus "may not supply a reasoned basis for the agency's action that the agency itself has not given." Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285-86 (1974). Nevertheless, a decision that is not fully explained may be upheld "if the agency's path may reasonably be discerned." Id. at 286.

**III. Analysis**

 A. Jurisdiction

In his Renewed Motion to Dismiss, the Secretary argues that this Court lacks subject-matter jurisdiction to hear Plaintiff's claim. See Def. Rep. at 2. Defendant asserts that Plaintiff's suit is essentially one for money damages in excess of $10,000 and thus, under the Tucker Act, lies within the exclusive jurisdiction of the Court of Federal Claims. Id. at 3. The Court

disagrees.  Under the clear law of this Circuit, a claim falls within the scope of the Tucker Act "only if the plaintiff seeks money or the district court grants it."  Smalls v. United States, 471 F.3d 186, 189 (D.C. Cir. 2006) (quoting Kidwell v. Dep't of the Army, Bd. for Corr. of Military Records, 56 F.3d 279, 285 (D.C. Cir. 1995)) (internal quotation marks omitted).  Because Plaintiff's currently pending claim is for injunctive relief (in the form of a remand to the BCNR) only, and not for money damages, it does not fall within the scope of the Tucker Act and is squarely within the subject-matter jurisdiction of this Court.

The Tucker Act operates as a limited waiver of the United States' sovereign immunity for non-tort claims for money damages, vesting jurisdiction for such suits in the Court of Federal Claims.  See Charlton v. Donley, 611 F. Supp. 2d 73, 75 (D.D.C. 2009).  "The Tucker Act actually consists of two parts: 28 U.S.C. § 1491, and 28 U.S.C. § 1346(a)(2), which is commonly known as the 'Little Tucker Act.'"  Randall v. United States, 95 F.3d 339, 346 (4th Cir. 1996). The Tucker Act gives the Court of Federal Claims subject-matter jurisdiction over non-tort claims against the United States for money damages that are "founded either upon the Constitution, or any act of Congress or any regulation of an executive department."  28 U.S.C. § 1491(a)(1).  "The Little Tucker Act makes the jurisdiction of the Court of Federal Claims concurrent with the district court for civil actions or claims against the United States for $10,000 or less."  Randall, 95 F.3d at 346-47 (citing 28 U.S.C. § 1346(a)(2)).  Similarly, "[t]he APA waives sovereign immunity . . . for remedies other than money damages arising from an agency's unlawful action."  Bublitz v. Brownlee, 309 F. Supp. 2d 1, 6 (D.D.C. 2004) (emphasis in original).  In almost all cases, such suits must be heard in the district court.  See Richardson v. Morris, 409 U.S. 464, 465 (1973) (holding Tucker Act authorizes only suits for money damages

to be heard in the Court of Federal Claims because "that . . . [c]ourt . . . has no power to grant equitable relief").

This Circuit uses a self-described "bright line" approach to the Tucker Act, considering cases within its scope "only if the plaintiff seeks money or the district court grants it." Smalls, 471 F.3d at 189 (quoting Kidwell, 56 F.3d at 285) (internal quotation marks omitted). A claim is "subject to the Tucker Act and its jurisdictional consequences if, in whole or in part, it explicitly or 'in essence' seeks more than $10,000 in monetary relief from the federal government." Kidwell, 56 F.3d at 284 (internal citation omitted). Complaints for equitable relief may be considered "in essence" claims for money damages if the equitable relief lacks "considerable value independent of any future potential for monetary relief." Smalls, 471 F.3d at 190 (quoting Tootle v. Sec'y of the Navy, 446 F.3d 167, 176 (D.C. Cir. 2006)) (internal quotation marks omitted). The Court's inquiry into whether the complaint seeks money damages, however, must "generally [be] limit[ed] to the four corners of the complaint . . . [because] an inquiry into the consequences of [the] plaintiff['s] victor[y] – even automatic consequences – would 'take [the court] outside the record sought to be reviewed and thereby complicate the jurisdictional issue.'" Smalls, 471 F.3d at 189 (quoting Tootle, 446 F.3d at 174, and Kidwell, 56 F.4d at 285 (internal citation and quotation marks omitted)). "The fact that in seeking the correction of a military record the plaintiff may, if successful, obtain monetary relief from the United States in subsequent administrative proceedings is insufficient to deprive the district court of jurisdiction." Smalls, 471 F.3d at 67 (citing Tootle, 446 F.3d at 176, and Kidwell, 56 F.3d at 284-285).

In his initial Complaint in this case, Plaintiff asked this Court to "[s]et aside the findings of the BCNR . . . and [to c]orrect Plaintiff's record to reflect that Plaintiff served continuously

from the date of his enlistment in 1980 until the date of his retirement in 2006; [and to c]orrect Plaintiff's record to reflect promotion with his peers to E-9 . . . ." See Compl. at 19. Alternatively, Plaintiff requested that the Court "remand Plaintiff's case to the BCNR for consideration of Plaintiff's requested relief and arguments contained in his 2007 BCNR application." Id. at 19-20. In an earlier Opinion in this case, this Court dismissed on justiciability grounds Plaintiff's requests that the Court itself award retroactive reenlistment and promotion. See Remmie I, 846 F. Supp. 2d at 95. At this stage in the litigation, all that remains of Plaintiff's original suit is his APA claim, for which he seeks only remand to the BCNR for further consideration. See id. The Secretary wisely does not contest that at least on its face, Plaintiff's APA claim seeks only equitable relief.

The Secretary nonetheless argues that Plaintiff's claim is "in essence" one for money damages because "[t]he correction of Plaintiff's records to reflect a retroactive reeinlistment in June 1993 and over six years of additional service has absolutely no value whatsoever 'independent of any future potential for monetary relief.'" See Def. Rep. at 5 (quoting Charlton, 611 F. Supp. 2d at 76). Likewise, he argues that the non-monetary value of Plaintiff's request for "a correction of Plaintiff's records to reflect a retroactive promotion with his peers . . . certainly pales in comparison to the large monetary payout . . . 'immediately and necessarily' . . . flowing from such correction." See id. (quoting Powell v. Marsh, 560 F. Supp. 636, 639 (D.D.C. 1983)). While the Secretary may be correct that the monetary remuneration that might flow from the correction of his records is Plaintiff's ultimate goal, the Secretary misinterprets the nature of the inquiry permitted by the clear law of this Circuit.

The Secretary's – or even this Court's – beliefs regarding Plaintiff's ultimate desire for financial gain is irrelevant to the present inquiry for two reasons. First, this Circuit's cases

simply do not permit this Court to undertake the kind of inquiry into Plaintiff's motives that the Secretary appears to seek. Such investigations "into the consequences of [the] plaintiff['s] victor[y] – even automatic consequences" are prohibited because of their potential to "'take [the court] outside the record sought to be reviewed and thereby complicate the jurisdictional issue.'" Kidwell, 56 F.3d at 285 (quoting Vietnam Veterans of Am. v. Sec'y of the Navy, 843 F.2d 528, 534 (D.C. Cir. 1988)). The Secretary's assertion that this claim is "in essence" one for money damages because he deems Plaintiff's requested relief to have "absolutely no" non-monetary value is precisely the sort of outside-the-record speculation that our bright-line rule seeks to prevent. To the extent that Plaintiff has hinted at a desire for monetary gain, he is entirely free to do so: "[Plaintiff] can hint at a[n] . . . interest [in monetary gain] and stay in the district court as long as the 'plain terms' of his complaint do not mention monetary relief." Id. at 286. As our Circuit notes, "[I]t is an extremely rare plaintiff who has trouble asking for money, if that is what he wants." Wolfe v. Marsh, 846 F.2d 782, 784 n.2 (D.C. Cir. 1988). Given that both Plaintiff's already-dismissed requests that the Court correct his records to reflect retroactive reenlistment and promotion and his request for remand were undeniably prayers for equitable relief, the Court finds itself hard pressed to stray from this Circuit's guidance and look beyond the four corners of those requests.

Furthermore, even if the Secretary's proposed inquiry into Plaintiff's "true motivations" were relevant and permissible, his assertion that the relief Plaintiff desires from this Court is truly monetary in nature simply misrepresents Plaintiff's claim. Plaintiff does not seek a direct financial benefit from this Court, nor does he even seek action by this Court that would lead directly to a financial benefit from the Navy. The Secretary is certainly correct that if this Court were to directly order a correction of Plaintiff's records, the Navy would "immediately and

10

necessarily" owe him a substantial sum of money. Plaintiff's request that this Court correct his records, however, has already been dismissed from the case. Remmie I, 846 F. Supp 2d at 95. Plaintiff's only remaining claim is for remand to the Navy for further consideration. Any financial benefit Plaintiff might receive in the future, therefore, would be the result of a "subsequent administrative proceeding[]" and is thus "insufficient to deprive the district court of jurisdiction." Smalls, 471 F.3d at 190 (citing Tootle, 446 F.3d at 176, and Kidwell, 56 F.3d at 284-85). Even if financial benefit as a "consequence" of Plaintiff's requested relief were a permissible subject for this Court's inquiry, the financial benefit at issue here is not even a direct consequence. See Kidwell, 56 F.3d at 284-85.

Because any financial benefit Plaintiff might receive is not remotely within the Court's control, Plaintiff's claim cannot be characterized as a claim for money damages – greater than $10,000 or otherwise – and is not within the scope of the Tucker Act. Id. As a result, Plaintiff's claim for injunctive relief plainly fits within this Court's subject-matter jurisdiction.

B. APA Review

Having resolved the jurisdictional question in Plaintiff's favor, the Court now turns to Plaintiff's APA challenge to the BCNR's 2008 Decision. In doing so, the Court must first determine the appropriate standard of review.

1. *Standard of Review*

By statute, "the Secretary of a military department may correct any military record of [his] department when [he] considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). This review is done through civilian boards for the correction of military records – in this case, the BCNR. Federal courts review final decisions made by the civilian records correction boards under the APA. See Kidwell, 56 F.3d at 283-84.

In many cases, this Circuit has found that decisions by the corrections boards typically receive the benefit of an "unusually deferential application of the 'arbitrary or capricious' standard." Kreis v. Sec'y of Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989) (Kreis I) (noting it is "simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act 'when he considers it necessary to correct an error or remove an injustice' . . . than it is if he is required to act whenever a court determines that certain objective conditions are met") (emphasis in original). This does not mean that the BCNR's decisions cannot be reviewed by federal courts, but rather that "only the most egregious decisions may be prevented under such a deferential standard of review." Id. at 1515.

This "unusually deferential" standard of review, however, is inappropriate in this case. The law of this Circuit differentiates between "military judgment requiring military expertise," which warrants the use of the "unusually deferential" standard, and "review of the Board's application of a procedural regulation governing its case adjudication process." Kreis v. Sec'y of Air Force, 406 F.3d 684, 686 (D.C. Cir. 2005) (Kreis III). Here, Plaintiff does not seek the Court's intervention in a traditional military personnel matter, but rather has raised "non-frivolous claims of plain legal error involving the Army's failure to comply with statutes, regulations, and mandatory procedures." Wilhelmus v. Geren, 796 F. Supp. 2d 157, 161-62 (D.D.C. 2011) (applying traditional APA standard to Plaintiff's claim that corrections board did not distinguish relevant precedent in reaching its decision) (internal quotation marks omitted); cf. Powers v. Donley, 844 F. Supp. 2d 65, 67 (D.D.C. 2012) (noting "Plaintiff . . . is a former Air Force officer who believes that her supervisor's failure to rank her among her peers is an injustice that merits this Court's intervention" and applying highly deferential standard). The ordinary APA standard will thus apply.

>   2. *Merits*

Plaintiff argues that the BCNR's 2008 decision to deny his requests for relief – other than removing his name from the Central Registry – was arbitrary and capricious for two reasons. See Pl. Cross-Mot. at 20, 24. First, Plaintiff asserts that the Board failed in its duty to consider new arguments, evidence, and other matters not previously considered. See Compl. ¶ 98; Pl. Cross-Mot. at 20. Second, Plaintiff claims that the Board erroneously concluded that the additional relief he requested was outside its purview. See Pl. Cross-Mot. at 24. For his part, the Secretary argues that the Board properly concluded that Plaintiff's 2007 petition did not present material that warranted reconsideration of his previous requests for relief, and that certain of the relief Plaintiff requested was outside its purview. See Def. Rep. at 11-12. As to both issues, the Court finds that the Board failed to provide an adequate explanation.

"A 'fundamental' requirement of administrative law is that an agency 'set forth its reasons' for decision; an agency's failure to do so constitutes arbitrary and capricious agency action." Tourus Records, Inc. v. Drug Enforcement Admin., 259 F.3d 731, 737 (D.C. Cir. 2001) (quoting Roelofs v. Sec'y of the Air Force, 628 F.2d 549, 599 (D.C. Cir. 1980)). This requirement is codified at 5 U.S.C. § 555(e), which requires an agency to provide "a brief statement of the grounds for denial" whenever the agency "den[ies] in whole or in part . . . a written application, petition or other request of an interested person made in connection with any agency proceeding," unless the agency is "affirming a prior denial or . . . the denial is self-explanatory." Id. at 600. "This requirement not only ensures the agency's careful consideration of such requests, but also gives parties the opportunity to apprise the agency of any errors it may have made and, if the agency persists in its decision, facilitates judicial review." Tourus Records, 259 F.3d at 737. "When an agency provides a statement of reasons insufficient to

permit a court to discern its rationale, or states no reasons at all, the usual remedy is a 'remand to the agency for additional investigation or explanation.'" Id. (quoting Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985)).

The D.C. Circuit has described the "brief statement" requirement of § 555(e) as "minimal," Butte County v. Hogen, 613 F.3d 190, 194 (D.C. Cir. 2010), saying that it "probably does not add to, and may even diminish, the burden put on an agency by the APA's provision for judicial review." Roelofs, 628 F.2d at 601.  At core, this requirement simply forces the agency to explain "'why it chose to do what it did.'" Tourus Records, 259 F.3d at 737 (internal citation omitted).  The agency explanations that the D.C. Circuit has branded too brief seem to be limited to single, conclusory sentences. See Butte County, 613 F.3d at 195 ("Yet the entirety of Interior's response to Butte County was this: 'We are not inclined to revisit this decision now because the Office of the Solicitor reviewed this matter in 2003, and concurred in the NIGC's determination of March 14, 2003.'") (alteration omitted); Tourus Records, 259 F.3d at 737 ("The letter says nothing other than that the 'Affidavit of Indigency you submitted in lieu of a cost bond is not adequately supported.'  That is not a statement of reasoning, but of conclusion.") (citation omitted); see also Roelofs, 628 F.2d at 596 (agency "prepared no statement of findings and offered no explanation for its decision").  Likewise, this Circuit has deemed insufficient those agency explanations that "merely parrot[] the language of a statute without providing an account of how it reached its results." Dickson v. Sec'y of Defense, 68 F.3d 1396, 1405 (D.C. Cir. 1995).

Here, even assuming the Secretary is correct that Plaintiff's requests beyond having his name removed from the Central Registry were outside the Board's purview or contained unwarranted requests for reconsideration, the Board's explanation does not meet even the

"minimal" requirement of § 555(e).  Plaintiff's 2007 petition requested many different forms of relief: a notation that his 1993 departure from the Navy was involuntary, constructive service, retroactive promotion with his peers, back pay and allowances, retrospective and prospective increases in retirement pay, reimbursement for his legal costs, an investigation by the Department of Defense's Office of the Inspector General regarding statements made by his ex-wife and others before Navy administrative bodies and in their divorce proceedings, an investigation into actions taken by Dr. Mark Long, the Navy psychiatrist who examined him after the child abuse allegation was made, and a review and ultimate reversal of all service-related adverse judgments taken against service members who were evaluated by Dr. Long and others in the Navy Family Advocacy Program.

After resolving the issue of the Central Registry, the Board's 2008 decision disposes of all of Plaintiff's remaining requests for relief in a single sentence, stating, "His other requests were not considered by the Board as they pertain to matters not within its purview, such as the initiation of an investigation by the Inspector General and payment of attorney's fees, and requests for reconsideration of matters previously considered by the Board which were not accompanied by new material evidence or other matters."  See AR 131.  The second half of this sentence merely repeats the regulation, which provides that reconsideration "will be granted only upon presentation by the applicant of new and material evidence or other matter not previously considered by the Board." 32 C.F.R. § 723.9.  What is missing is why the Board believed that these matters had been previously considered and, more important, why the evidence and other matters in Plaintiff's petition were not deemed sufficiently new and material to warrant reconsideration.  In addition, the term "such as" implies the Board believed other matters to be outside its purview, but it never stated what those were.

While the Secretary's <u>briefs</u> in this case explain in some detail how the Board purportedly reached its conclusion, "courts may not accept appellate counsel's *post hoc* rationalizations for agency action." <u>Burlington Truck Lines, Inc. v. United States</u>, 371 U.S. 156, 168 (1962). Even if the Secretary's interpretation of the Board's reconsideration regulation is a reasonable one – *i.e.*, that "new and material" modifies both "evidence" and "other matters" – the Board's decision itself "provides no basis upon which [the Court] could conclude that it was the product of reasoned decisionmaking." <u>Tourus Records</u>, 259 F.3d at 737.

Because § 555(e) requires the Board to provide an explanation of its denial of Plaintiff's petition, something more than its bare, conclusory statement was required. The result the Board reached here may have been unobjectionable and based on a correct interpretation of the BCNR's regulations, but the Secretary is required to show both Plaintiff and this Court how it got there. The Board must do more than "merely parrot" the language of its reconsideration regulations to satisfy this requirement, as "to conduct even a limited review, [the Court] must be made privy to the Board's reasoning." <u>Dickson</u>, 68 F.3d at 1405, 1406 n.17. This case, accordingly, will be remanded to the BCNR so that it may further explain its reasons for determining that Plaintiff's requested relief was outside its purview and that his requests for reconsideration were not supported by "new and material evidence or other matters not previously considered by the Board." 32 C.F.R. § 723.9.

## IV. Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order this day granting in part and denying in part Plaintiff's Cross-Motion for Summary Judgment, denying Defendant's Motion for Summary Judgment and Renewed Motion to Dismiss, and remanding the matter to the Secretary for further proceedings consistent with this Opinion.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: October 15, 2012